The Honorable Wayne Nichols State Representative 304 Poinsett Street Marked Tree, AR 72365-2237
Dear Representative Nichols:
I am writing in response to your request for my opinion regarding a question you have posed on behalf of Mayor Marion Bearden of Tyronza. You report the following facts:
 On November 5, 2002, Ms. Bearden was elected Mayor of Tyronza. The incumbent mayor, Drexel Gill, had been in office for 12 years and was very bitter after his defeat. On or about November 14, 2002 Mr. Gill went to Unico Bank and cashed out a CD that the City owned in the amount of $136,326.94 issued under the name of LOPFI Fund.[1] Mr. Gill then had a check issued to LOPFI in the amount of $136,326.94 and mailed to their office. This CD was not due to mature until October 27, 2003. The City of Tyronza took a penalty of $907.00 on this CD for early withdrawal.
 The City of Tyronza had been receiving monthly statements from LOFPI [sic] and had been making timely payments on their LOPFI account from their general account. The funds which were in the DC [sic] account, which Mr. Gill withdrew, had been accumulated from insurance turnback money that the City had received from the state to help pay for the expenses of the LOPFI fund. Since the monthly LOPFI statement was paid from the City's general account and Mr. Gill never replaced the money spent from this account with the funds received from the State, the general account lost money that could have gone toward the daily operations of the City.
 The withdrawal of this CD and the payment made to LOPFI was done without the knowledge or approval of the City Council.
 Mayor Bearden has contacted LOFPI [sic] on several occasions requesting that the money be returned to the City. Ms. Hinshaw with LOPFI has stated that there is no law allowing her to return these funds.
 LOPFI has provided me with correspondence from the former mayor, dated November 14, 2002, specifying that 75% of the amount transmitted should be devoted to firemen's retirement and 25% to police officers' retirement.
 In response to the city's request that this money be returned, LOPFI's Executive Director wrote:
 Since this transfer was done without the approval of the current city administration, I have decided to post a credit to your city's 2003 accounts payable in an amount sufficient to carry you through August 2003, at which time your City should receive its 2003 State Insurance Tax Turnback. The balance of the deposit is going to be distributed back with the FY2002 closing to Tyronza's LOPFI employer accounts in the manner set out in the November 14 letter from the City. The letter stipulated that 75% of the balance should be applied to the fire account and 25% to your police account. This deposit should lower your 2004 employer contribution rates to some extent.
You have asked me to opine on the following:
 Is LOPFI entitled to hold these funds or can they be returned to the City of Tyronza as requested?
RESPONSE
In my opinion, a court should decide whether it is appropriate that the funds the former mayor transferred should remain in the state-administered LOPFI account. Even if a court were to direct that the funds be returned to the city, I do not believe it would be appropriate for the city to treat them as general revenues, given that insurance turnback funds are earmarked for contributions to LOPFI or, under certain circumstances, to local pension funds.
I question the city's authority to use the money it had placed in its local LOPFI Fund to replace funds it had contributed to LOPFI using general revenues. Section 24-10-405 of the Code provides for contributions by a participating employer into an "employer accumulation account" at a rate computed by the LOPFI Board of Trustees. I gather from your question that the city has been making timely payments to this account from general revenues. However, I do not believe the city can replace those general funds with the funds initially deposited into the local LOPFI Fund, which reportedly contained only state insurance turnback revenues specifically earmarked to meet the city's obligations to the state-administered LOPFI program.
You report that the corpus of the LOPFI Fund consisted of "insurance turnback money" received from the state. These funds are derived from taxes levied on various foreign and domestic insurers. See A.C.A. §24-10-409(a). The designated permissible uses of these funds are set forth at A.C.A. § 24-10-409(e), which provides:
 All moneys so received by the political subdivisions shall be applied to the employer contribution required to support this system, provided however, if the governing body of any political subdivision determines that the required employer contribution is less than the amount of moneys so received during the year, the governing body may transfer any or all of the excess moneys to their police pension funds or fire pension funds, or both, in whatever amount deemed appropriate.[2]
This statute straightforwardly declares that turnback funds must exclusively be devoted, first, to discharge the employer's annual obligation to LOPFI and, secondly, if an "excess" exists and the city council so resolves, as contributions to local police or fire pension funds. Section 24-10-411 of the Code further provides that if a local police pension and relief fund or firemen's pension and relief fund has no participants, any excess in the LOPFI subsidy account may be transferred to the city or town general fund for capital improvements. See Ark. Ops. Att'y Gen. Nos. 95-327 (discussing the meaning of the term "excess" as used in these statutes) and 93-216 (opining that A.C.A. § 24-10-411 also authorizes transferring to general funds the entire balance of a local relief fund that has no participants). Nothing in these statutes or any other suggests that a city may use insurance turnback funds to repay itself for past LOPFI contributions it has made out of general revenues.
Although A.C.A. § 24-10-409(e) specifies that any diversion of turnback revenues to local funds must be approved by the city council, the Code is silent on the question of whether a lump-sum contribution to LOPFI of turnback funds exceeding a city's current obligation must likewise be approved by the city council. Logic would suggest that it should, since any such contribution that exceeds the city's annual obligation would curtail the council's discretion to redirect the excess to local pension funds. Moreover, a conveyance of the sort at issue clearly appears to exceed the statutory scope of the mayor's powers. Tyronza is a city of the second class. The general mayoral powers in a city of the second class are enumerated at A.C.A. § 14-44-107:
 (a) The mayor in cities of the second class shall be ex officio president of the city council, shall preside at its meetings, and shall have a vote to establish a quorum of the council, or when the mayor's vote is needed to pass any ordinance, bylaw, resolution, order, or motion.
 (b)(1) The mayor in these cities shall have the power to veto, within five (5) days, Sundays excepted, after the action of the council thereon, any ordinance, resolution, or order adopted or made by the council, or any part thereof, which in his judgment is contrary to the public interest.
 (2)(A) In case of a veto, before the next regular meeting of the council, the mayor shall file in the office of the city recorder, to be laid before the meeting, a written statement of his reasons for so doing.
 (B) No ordinance, resolution, or order, or part thereof, vetoed by the mayor shall have any force or validity unless, after the written statement is laid before it, the council shall, by a vote of two-thirds (2/3) of all the aldermen elected thereto, pass it over the veto.[3]
Nothing in this list would support the former mayor's alleged conduct in this case. Given that the city council was not even aware of the previous mayor's transferal of the money, it would appear from the foregoing that the defeated mayor was not statutorily authorized to transfer the funds.[4] Nevertheless, the transfer occurred, raising the question of whether LOPFI should return the funds to the city.
You report that the current mayor has repeatedly asked LOPFI to return the transferred funds. LOPFI has replied that no statute would authorize its doing so. I have found no authority specifying how matters should proceed under these circumstances. To the extent that the former mayor exceeded his authority in transferring the money without city council approval, the city may have a claim against LOPFI in an action for declaratory judgment and injunctive relief maintaining that the entire transaction should be voided and the money returned.[5] Moreover, given that the turnback funds had simply been accruing in the local LOPFI Fund rather than being used to pay monthly LOPFI obligations, it seems quite likely that an "excess" would have existed at the end of fiscal year 2002, raising the question of whether the local pension funds that might have realized this excess would have a claim against LOPFI.
Given the above uncertainties, I cannot opine that the LOPFI Executive Director is clearly correct in her proposed disposition of the funds. However, I appreciate her reluctance simply to return funds that a city official has deposited on the city's behalf, particularly in light of the fact that the city apparently intends to use those funds as general revenue in derogation of state law. Under the circumstances, LOPFI might itself initiate an interpleader action, leaving the court to determine what should be done with the money. Not being a finder of fact, I am not situated to opine on what course of action the city should pursue to resolve the existing situation. I recommend that the executive director discuss LOPFI's options with your legal counsel.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The term "LOPFI" is an acronym for the Arkansas Local Police and Fire Retirement System, which is a program administered on a statewide level in accordance with chapter 10 of title 24 of the Arkansas Code (Repl. 2002). Chapter 11 of title 24 authorizes locally administered pension programs for police and firemen.
[2] The reference to "their police pension funds or fire pension funds" in this passage is not to LOPFI, but rather to any pension funds that may have been organized under local management pursuant to the pre-LOPFI legislation currently codified at chapter 11 of title 24 of the Code. LOPFI was initially authorized by Act 364 of 1981.
[3] Section 14-58-303 of the Arkansas Code (Supp. 2001), as amended by Act 508 of 2001, further provides:
 (a) In a city of the first class, city of the second class or incorporated town, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
In my opinion, this statute addresses only the purchase of goods or services and is inapplicable to the issue you have raised.
[4] I consider it immaterial to the issue of whether the transfer was warranted that he made the transfer after the date of his defeat. So long as his term had not expired, he would be authorized to do anything he might have done had he prevailed in the election.
[5] Although it does not bear on the question of whether LOPFI should return the funds at issue, I will note that to the extent the former mayor exceeded his authority in prematurely liquidating the unmatured CD, the city may also have a claim against the former mayor's surety.